UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LINDA GILCHRIST,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>CNG FINANCIAL CORPORATION d/b/a<br>CHECK'N GO INC.,<br>　　　　　　　Defendant. | Civil Action No._____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. TCPA, 47 U.S.C. § 227<br>2. SCUTPA, South Carolina Unfair Trade Practices Act<br>3. Intrusion Upon Seclusion |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Linda Gilchrist ("Plaintiff" or "Ms. Gilchrist"), by and through her attorneys, alleges the following violations of her consumer protection rights against Defendant CNG Financial Corporation d/b/a Check'n Go Inc. ("Defendant" or "Check'n Go").

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Plaintiff's Complaint is based on upon the South Carolina Unfair Trade Practices Act, S.C. Code Ann § 39-5, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce. . ."

3. Count III of Plaintiff Complaint is based upon Invasion of Privacy – Intrusion Upon

Seclusion, as derived from § 652B of the Restatement (Second) of Torts. § 652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . that would be highly offensive to a reasonable person."

## JURISDICTION

4. Jurisdiction of this court arises under 47 U.S.C. §227 and 28 U.S.C. §1331.

5. Plaintiff also brings this complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship (Plaintiff is a citizen of South Carolina and Defendant is a citizen of Ohio) and the amount in controversy exceeds $75,000.

6. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events giving rise to the claim occurred in this District.

7. Because Check'n Go's conduct was aimed at South Carolina, the effects of their conduct was suffered in South Carolina, and it transacts business in South Carolina, personal jurisdiction is established.

## PARTIES

8. Ms. Gilchrist is a natural person residing in the city of Mullins, Marion County, South Carolina.

9. Check'n Go is a corporation with its principal place of business located in Ohio. Check'n Go can be served upon its registered agent at 7755 Montgomery Road, Suite 400, Cincinnati, OH 45236-4197.

10. Check'n Go acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and

insurers.

## FACTUAL ALLEGATIONS

11. The debt(s) underlying this action were obligation(s) or alleged obligation(s) of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction were primarily for personal, family, or household purposes.

12. In or around March 2020, Check'n Go began calling Ms. Gilchrist's cellular phone attempting to collect one or more alleged debts.

13. The calls mainly originated from the numbers (843) 292-9222 and (877) 793-2265.

14. Upon information and belief, these phone numbers are owned, operated, or controlled by Check'n Go or its agent(s).

15. Upon information and belief, the telephone system used by Check'n Go to call Ms. Gilchrist's cellular telephone "use[s] a random generator to determine the order in which to pick phone numbers from a preproduced list" and "then store[s] those numbers to be dialed at a later time." Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1175 n.7 (2021).

16. Upon information and belief, Check'n Go's system used to call Ms. Gilchrist has the capacity to store a telephone number using a random or sequential number generator.

17. Upon information and belief, Check'n Go's system used to call Ms. Gilchrist has the capacity to produce a telephone number using a random or sequential number generator.

18. On or about April 6, 2020, Ms. Gilchrist answered a call from Check'n Go and spoke with a representative.

19. After picking up the call, Ms. Gilchrist noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

20. The representative informed Ms. Gilchrist that Check'n Go was attempting to collect an alleged debt.

21. After going through the identification process, Ms. Gilchrist informed the representative that she was unable to make a payment due to financial difficulties caused by an ongoing medical emergency.

22. Ms. Gilchrist instructed the representative to stop calling her and instead to communicate with her only in writing in the future, thereby revoking consent to be called on her cellular phone.

23. On or about April 8, 2020, Ms. Gilchrist answered another call from Check'n Go.

24. After picking up the call, Ms. Gilchrist again noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

25. After going through the identification process, Ms. Gilchrist again informed the representative that she was unable to make a payment due to financial difficulties caused by an ongoing medical emergency.

26. Ms. Gilchrist then stated she had already asked Check'n Go to stop calling her and again instructed the representative to stop calling her and instead to communicate with her only in writing.

27. On or about April 17, 2020, Ms. Gilchrist answered another call from Check'n Go.

28. After picking up the call, Ms. Gilchrist again noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

29. After going through the identification process, Ms. Gilchrist again informed the representative that she was unable to make a payment due to financial difficulties caused by an

ongoing medical emergency.

30. Ms. Gilchrist then stated she had already asked Check'n Go to stop calling her and again instructed the representative to stop calling her and instead to communicate with her only in writing.

31. On or about April 18, 2020, Ms. Gilchrist answered another call from Check'n Go.

32. After picking up the call, Ms. Gilchrist again noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

33. After going through the identification process, Ms. Gilchrist again informed the representative that she was unable to make a payment due to financial difficulties caused by an ongoing medical emergency.

34. Ms. Gilchrist then stated she had already asked Check'n Go to stop calling her and again instructed the representative to stop calling her and instead to communicate with her only in writing.

35. On or about April 24, 2020, Ms. Gilchrist answered another call from Check'n Go.

36. After picking up the call, Ms. Gilchrist again noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

37. After going through the identification process, Ms. Gilchrist again informed the representative that she was unable to make a payment due to financial difficulties caused by an ongoing medical emergency.

38. Ms. Gilchrist then stated she had already asked Check'n Go to stop calling her and again instructed the representative to stop calling her and instead to communicate with her only in

writing.

39. On or about July 6, 2020, Ms. Gilchrist answered another call from Check'n Go.

40. After picking up the call, Ms. Gilchrist again noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

41. After going through the identification process, Ms. Gilchrist again informed the representative that she was unable to make a payment due to financial difficulties caused by an ongoing medical emergency.

42. Ms. Gilchrist then stated she had already asked Check'n Go to stop calling her and again instructed the representative to stop calling her and instead to communicate with her only in writing.

43. On or about July 7, 2020, Ms. Gilchrist answered another call from Check'n Go.

44. After picking up the call, Ms. Gilchrist again noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

45. After going through the identification process, Ms. Gilchrist again informed the representative that she was unable to make a payment due to financial difficulties caused by an ongoing medical emergency.

46. Ms. Gilchrist then stated she had already asked Check'n Go to stop calling her and again instructed the representative to stop calling her and instead to communicate with her only in writing.

47. On July 8, 2020, Ms. Gilchrist sent two text messages containing the word "Stop" to the (877) 793-2265 number.

48. However, after having revoked consent to be called on at least nine separate occasions, and experiencing severe mental stress as a result of the constant calls, Ms. Gilchrist stopped answering calls from Check'n Go's number.

49. Between March 23, 2020 and October 12, 2020, Check'n Go called Ms. Gilchrist's cellular telephone no less than ONE HUNDRED AND FIFTY (150) TIMES after Ms. Gilchrist first revoked consent to be contacted.

50. Check'n Go called Ms. Gilchrist almost every day, including the weekends.

51. Check'n Go went as far as calling Ms. Gilchrist up to four (4) times in one day.

52. Upon information and belief, Check'n Go also called and texted, or attempted to call and text friends and family of Ms. Gilchrist with the intention that they would communicate to Ms. Gilchrist that Check'n Go was attempting to collect a debt from her, causing Ms. Gilchrist additional embarrassment and distress.

53. Upon information and belief, Check'n Go called Ms. Gilchrist and delivered prerecorded or artificial voice messages.

54. Upon information and belief, Check'n Go's automatic dialer failed to return to the on-hook state within 60 seconds of completion of dialing.

55. Upon information and belief, Check'n Go is familiar with the TCPA and South Carolina consumer protection statutes.

56. Check'n Go's conduct was not only done willfully but was done with the intention of causing Ms. Gilchrist such distress, so as to induce her to pay the debt or pay more than she was able to.

57. On one of the calls from Check'n Go a representative asked Ms. Gilchrist if she could pay $50 per month (rather than the existing $400 plus monthly payment). Ms. Gilchrist asked the

representative to send her a new contract but Check'n Go never did and never again mentioned a reduced payment.

58. Each and every one of Check'n Go's telephone calls caused Ms. Gilchrist distraction, annoyance, frustration, and temporary loss of use of her telephone line.

59. Ms. Gilchrist, who is 73 years old, retired, and on a fixed income, had several pre-existing medical conditions prior to Check'n Go beginning its collection calls. However, prior to the calls, Ms. Gilchrist was managing her medical issues well.

60. Once the barrage of calls from Check'n Go started, Ms. Gilchrist began to experience increased anxiety and physical symptoms from the stress.

61. As a result of Check'n Go's conduct, Ms. Gilchrist has sustained actual damages including, but not limited to, stress, anxiety, severe migraines, loss of sleep (she was often up all night due to the stress from the calls), embarrassment, anguish, severe emotional, physical and mental pain.

62. Check'n Go's constant harassment caused Ms. Gilchrist such mental and emotional anguish that she began passing out from stress. Ms. Gilchrist was already taking prescribed anti-anxiety medication, but after the stress caused by Check'n Go's barrage of calls, Ms. Gilchrist needed to increase the dosage of her medication. Ms. Gilchrist discussed the stress and harassment she was feeling from Check'n Go's conduct with her doctor.

63. Ms. Gilchrist also began experiencing heart palpitations resulting from the stress of the constant calls, and consequently needed to increase her visits to her heart specialist. Her doctor also ordered her to undergo an Echocardiogram as a result. The increased doctor visits (from three times per year to six times per year) and additional tests resulted in additional out-of-pocket costs to Ms. Gilchrist.

64. Ms. Gilchrist's family observed changes in Ms. Gilchrist's behavior due to the stress of the

calls. They witnessed her become unusually distracted, upset, anxious, and short-tempered. Ms. Gilchrist was embarrassed about the calls from Check'n Go and tried to hide it from her family for a while, which was difficult and caused her even more stress.

65. Eventually, upon cessation of the calls from Check'n Go, Ms. Gilchrist began feeling calmer and physically healthier.

66. Check'n Go was informed, on at least nine separate occasions, that Ms. Gilchrist was enduring a medical crisis which was causing her financial difficulties and stress. Despite this knowledge, Check'n Go intentionally ignored Ms. Gilchrist's revocations of consent to be called and continued to harass her to the point of causing additional and exacerbated medical harm. Check'n Go's above-described actions were therefore knowing and willful.

## COUNT I
### Violations of the TCPA, 47 U.S.C. §227

67. Ms. Gilchrist incorporates by reference the foregoing paragraphs as though fully stated herein.

68. Check'n Go violated the TCPA. Check'n Go's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, Check'n Go violated 47 U.S.C. §227(b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."

   b. Within four years prior to the filing of this action, on multiple occasions Check'n

   Go violated 47 U.S.C. §227(b)(1)(B) which states in pertinent part, "[i]t shall be unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party".

  c. Within four years prior to the filing of this action, on multiple occasions, Check'n Go negligently, willfully and/or knowingly called Ms. Gilchrist's cellular telephone using a prerecorded or artificial voice message, or an automatic telephone dialing system and, as such, Check'n Go negligently, willfully and/or knowingly violated the TCPA.

69. As a result of Check'n Go's violations of 47 U.S.C. §227, Ms. Gilchrist is entitled to declaratory judgment that Check'n Go's conduct violated the TCPA, and an award of five hundred dollars ($500.00) in statutory damages, for each and every negligent violation, pursuant to §227(b)(3)(B). If the Court finds that Check'n Go knowingly and/or willfully violated the TCPA, Ms. Gilchrist is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to §227(b)(3)(B), (C).

## COUNT II
### (Violations of SCUTPA, S.C. Code Ann § 39-5)

70. Ms. Gilchrist incorporates herein by reference the factual allegations of this complaint as though fully set forth herein at length.

71. Check'n Go violated the SCUTPA. Check'n Go's violations include, but are not limited to, the following:

  a. Check'n Go's actions constitute an "unfair. . .practice in the conduct of. . . commerce." Defendant's constant and repeated calls to Ms. Gilchrist, after she asked Check'n Go to stop calling her on at least nine occasions, after explaining

      her hardship and medical conditions, violated the law and constituted unfair practices.

    b. Check'n Go's conduct caused ascertainable monetary loss to Ms. Gilchrist by exacerbating her medical conditions, resulting in additional doctor visits, additional medical tests, and increased medications.

72. As a result of Defendant's violations of S.C. Code Ann § 39-5-20, Ms. Gilchrist is entitled to actual damages, costs, and attorney's fees. See S.C. Code Ann § 39-5-140. If the court finds that the violation was "willful or knowing," the "court shall award" treble damages. Id.

## COUNT III
### (Intrusion Upon Seclusion)

73. Defendant violated Plaintiffs' privacy. Defendant's violations include, but are not limited to, the following:

    a. Defendant intentionally intruded, physically or otherwise, upon Plaintiffs' solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt, despite numerous requests for the calls to cease.

    b. Defendant's conduct would be highly offensive to a reasonable person as Plaintiffs received calls frequently and consistently for a period of approximately nine months.

    c. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiffs to pay the alleged debt.

74. As a result of Defendant's violations of Plaintiffs' privacy, Defendant is liable to Plaintiffs for actual damages. If this Court finds that the conduct is found to be egregious, Plaintiffs may recover punitive damages.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Ms. Gilchrist hereby demands a trial by jury of all issues triable by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Linda Gilchrist respectfully requests judgment be entered against Defendant CNG Financial Corporation d/b/a Check'n Go Inc. for the following:

A.    Declaratory judgment that Check'n Go violated the TCPA;

B.    Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B);

C.    Statutory damages of $1,500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B), (C);

D.    Actual damages, costs, and attorney's fees pursuant to S.C. Code Ann. § 39-5-140

E.    Actual and punitive damages for intruding upon Plaintiff's seclusion;

F.    Awarding Ms. Gilchrist any pre-judgment and post-judgment interest as may be allowed under the law; and

G.    Any other relief that this Honorable Court deems appropriate.

Respectfully submitted this 17th day of September 2021.

                                                */s/ Chauntel Bland*
                                                Chauntel Bland, Esq. S.C. Bar #70150
                                                Law Offices of Chauntel Demetrius Bland
                                                463 Regency Park Drive
                                                Columbia, S.C. 29210
                                                E: chauntel.bland@yahoo.com
                                                T: (803)319-6262
                                                *Attorney for Plaintiff*
                                                *Linda Gilchrist*